# United States Court of Appeals

## For the First Circuit

_____

No. 00-2014


UNITED STATES OF AMERICA,

Appellee,

v.

MANUEL GONZÁLEZ-GONZÁLEZ,

Defendant, Appellant.

_____


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]


_____


Before

Torruella, Selya and Lynch, Circuit Judges.


_____


Judith H. Mizner for appellant.
Rose A. Briceño, Attorney, Criminal Division, Department of
Justice, for appellee.


_____


July 19, 2001

_____

**LYNCH, <u>Circuit Judge</u>**.  This case presents a question this court previously reserved: what is the standard to be applied to a criminal defendant's motion for a new trial where the claim is that the prosecution knowingly used perjured testimony.

Manuel González-González, convicted of drug conspiracy and money laundering offenses in Puerto Rico, sought a new trial based on what he asserts is newly discovered evidence that two government witnesses recanted their testimony against him after his trial. González says those two witnesses perjured themselves, and that the prosecution knew of at least one witness' perjury at the time.  On this point the trial judge made no finding as to whether there was perjury or, if so, whether the government knew about it.  Instead, the trial judge held that defendant did not, in any event, meet a "reasonable probability of a different result" standard, thus applying the standard used for claims of failure to disclose exculpatory evidence under <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963).  González also sought a new trial based on the government's failure to disclose exculpatory evidence, and he claims that the prosecution engaged in misconduct during his trial by misstating the extent of a government witness' cooperation.  The district court denied the motion.  We affirm.

**I.**

González was charged on November 2, 1994 with conspiracy to possess with intent to distribute cocaine and marijuana, possession with intent to distribute marijuana, possession with intent to distribute cocaine, importation of marijuana and cocaine, and aiding

-2-

and abetting in the laundering of narcotics-related proceeds.  After a nineteen-day jury trial, González was found guilty as charged and sentenced to life imprisonment.

At González's trial, several of González's alleged co-conspirators testified about González's involvement in the drug and money laundering offenses charged, as did several cooperating witnesses and federal agents involved in the investigation.  In addition, the government introduced documentary evidence, such as tape recordings of telephone conversations, travel records, and surveillance photographs to corroborate the testimonial evidence.  We summarize the evidence that was before the jury.

One of the government witnesses, Ricardo Rivero, testified that in 1991 González recruited him to assist in retrieving and repackaging 900 pounds of marijuana imported into Puerto Rico from Colombia, and in transporting cocaine from Puerto Rico to New York. The drugs were stored at the home of Manuel Garrido.  Luz Marina Giraldo, another witness cooperating with the government, corroborated Ricardo's testimony, as did an FBI agent who arrested Garrido and found the drugs.

Another of González's alleged recruits, Roberto Garraton-Rivera, testified as a government witness that he had participated in drug trafficking activities with González.  Garraton described specific occasions on which he and other associates of González smuggled drugs

-3-

to New York at González's behest. Both Garraton and Ricardo testified that they once called González to resolve a dispute they had over Garraton's payment for a shipment of drugs.

Several witnesses, including Ricardo and Giraldo, testified about a large shipment of marijuana and cocaine that González imported from Colombia to Puerto Rico in 1992, which was buried in the sand at a particular beach. Law enforcement officers testified that they seized a similar quantity of drugs in the same location as the one described in Ricardo's and Giraldo's testimony. Ricardo and Roberto Sierra Rivera, a paid government informant, also testified that they assisted González's organization in importing cocaine from Colombia to Puerto Rico in 1992. Both Ricardo and Sierra testified that they delivered some of the shipment to New York, and returned to Puerto Rico with the drug sale proceeds; they also testified that another participant was arrested on the return trip to Puerto Rico, which was corroborated by the arresting officer. Sierra also testified about the activities of González's drug trafficking enterprise during 1993. Law enforcement agents corroborated Sierra's testimony.

The government also provided evidence that González and his associates laundered the proceeds from the drug sales through financial institutions in Puerto Rico, then sent the money to Colombia. A cooperating government witness, Angel Santiago Mora, and an undercover FBI agent, Martin Suarez, testified about several instances when

González and others in his organization delivered several hundred thousand dollars in cash to them to be laundered. In addition to the testimony of Moran and Suarez, the government also produced audiotapes of González and his associates in which González made admissions about his participation in drug trafficking and money laundering activities.

After he was convicted and we affirmed his conviction on appeal, see United States v. González-González, 136 F.3d 6 (1st Cir. 1998), González moved for a new trial under Rule 33, Fed. R. Crim. P., based on newly discovered evidence which, González claimed, demonstrated that both Garraton and Giraldo had testified falsely against him at trial. In support of those claims, González offered sworn statements of two inmates attesting that they had overheard Giraldo recanting her trial testimony, and one inmate attesting that Garraton had recanted his testimony. González also claimed he was entitled to a new trial because the government knowingly permitted the introduction of false testimony by Giraldo and pressured Giraldo to testify falsely. In addition, González cited Brady violations and prosecutorial misconduct, claiming that the government failed to disclose exculpatory evidence, including an FBI report of Giraldo's debriefing, and also misled both González and the court about the status of Giraldo's cooperation with the government.

The district court denied González's motion, concluding that there was no reasonable probability that the evidence in the affidavits

would lead to González's acquittal upon retrial in light of the extensive evidence against González in addition to Giraldo and Garraton's testimony. The court also found that any Brady violations by the government did not compromise González's right to a fair trial because the undisclosed evidence was merely cumulative of evidence González used at trial to impeach Giraldo's credibility.

## II.

We review for manifest abuse of discretion the district court's denial of González's motion for a new trial. United States v. Alicea, 205 F.3d 480, 486 (1st Cir. 2000). The district court's interpretation of legal standards is reviewed de novo. United States v. Josleyn, 206 F.3d 144, 151 (1st Cir. 2000).

González brought his new trial motion under Fed. R. Crim. P. 33, which allows the court to order a new trial "if the interests of justice so require," and under a theory of alleged violations of Brady v. Maryland, 373 U.S. 83 (1963), which requires the prosecution to disclose material exculpatory evidence in its possession.

A.   Standards for Motions for New Trial

Generally under Rule 33, a defendant who seeks a new trial based on newly discovered evidence must show that: "(1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative

or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant." United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980); see also Alicea, 205 F.3d at 487. A defendant's new trial motion must be denied if he fails to meet any one of these factors. United States v. Falu-Gonzalez, 205 F.3d 436, 442 (1st Cir. 2000).

Different standards as to the third and fourth showings govern the consideration of new trial motions depending on the grounds for the motion. As we described in Josleyn, if the basis is that the government has failed to disclose information required by Brady, then the more defendant-friendly Kyles v. Whitley standard applies. See Joselyn, 206 F.3d at 151-52. Under the Kyles standard, the defendant must show a "reasonable probability" that had the evidence been disclosed to the defense the result of the proceeding would have been different, and that, in turn, requires an analysis of whether the trial resulted, in the absence of such evidence, in a verdict worthy of confidence. Kyles v. Whitley, 514 U.S. 419, 434 (1995). If, however, the motion is a routine Rule 33 motion based on newly discovered evidence that does not involve an alleged Brady violation, then the standard is more onerous for defendants, and defendant must show the new material evidence "will probably result in an acquittal." Wright, 625 F.2d at 1019. This means an "actual probability that an acquittal would have resulted if the evidence had been available." United States

v. <u>Sepulveda</u>, 15 F.3d 1216, 1220 (1st Cir. 1993).

A further application of these two basic standards -- the <u>Kyle</u> "verdict worthy of confidence" standard and the Rule 33 "actual probability" of acquittal standard -- was addressed in <u>United States</u> v. <u>Huddleston</u>, 194 F.3d 214 (1st Cir. 1999). The question there was what standard to apply to a new trial motion which alleged that the prosecutor had <u>unwittingly</u> used perjured testimony. <u>See</u> 194 F.3d at 221-22. <u>Huddleston</u> rejected earlier cases in this circuit suggesting that in such a situation, it may be appropriate to apply a lower standard, announced in <u>Larrison</u> v. <u>United States</u>, 24 F.2d 82 (7th Cir. 1928), that a defendant need only show that the newly discovered evidence "might" produce a different result. <u>See</u> <u>Larrison</u>, 24 F.2d at 87; <u>see</u> <u>also</u> <u>United States</u> v. <u>Natanel</u>, 938 F.2d 302, 313 (1st Cir. 1991). Instead, <u>Huddleston</u> held that

> when a defendant grounds a motion for a new trial in a criminal case on a claim that he has newly discovered perjury on the part of one or more government witnesses, the conviction nonetheless should stand unless the force of the newly discovered event (i.e., the fact and nature of the perjury) and the content of the corrected testimony are such that <u>an acquittal probably would result upon retrial</u>.

194 F.3d 221 (emphasis added). <u>Huddleston</u> expressly reserved for another day the question of the standard to be used as to claims of knowing or reckless use by the government of perjured testimony. <u>See</u> <u>id.</u>

We resolve that question as, we believe, Supreme Court precedent requires us to do. Although González does not categorize knowing use of perjured testimony as a Brady type error, we think it is sufficiently analogous that the Brady error rule should apply to claims of knowing use of perjured testimony.

The risk that a conviction was brought about by the government's knowing use of perjury goes to the concerns about fairness of the trial that animated Kyle. Obtaining a conviction by presenting testimony known to be perjured "is inconsistent with the rudimentary demands of justice." Mooney v. Holohan, 294 U.S. 103, 112 (1935); accord Giglio v. United States, 405 U.S. 150, 153 (1972). In Napue v. Illinois, 360 U.S. 264 (1959), a pre-Brady case, the Supreme Court said a new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." 360 U.S. at 271. The Supreme Court has several times referred to the prosecution's knowing use of perjured testimony as a category of Brady error, see, e.g., Strickler v. Greene, 527 U.S. 263, 280-81 (1999); United States v. Agurs, 427 U.S. 97, 103-04 (1976), while also repeating the standard that "a conviction . . . must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury," id. at 103. In United States v. Bagley, 473 U.S. 667 (1985), the Court noted that this rule had earlier been stated as a branch of the harmless error test, but it may be as

easily stated as a materiality standard. <u>See</u> 473 U.S. at 679. And recent decisions about <u>Brady</u> errors which did not involve knowing use of perjured materials continue to recognize that such errors are properly analyzed under <u>Brady</u>, employing the "reasonable likelihood" of acquittal standard. <u>See</u> <u>Strickler</u>, 527 U.S. at 298-99 (Souter, J., concurring in part and dissenting in part); <u>Kyles</u>, 514 U.S. at 433 n.7 (citing <u>Agurs</u>, 427 U.S. at 103).

In sum, a court's choice among the standards for analyzing new trial motions depends upon the ground for the new trial motion. First, for the non-<u>Brady</u> Rule 33 motion where a defendant seeks a new trial based on newly discovered evidence (other than evidence that an adverse witness testified falsely) the inquiry is whether that evidence (assuming it meets the first three prongs of the <u>Wright</u> test, <u>see</u> <u>supra</u>) in actual probability would result in acquittal if a new trial were granted. That test is also used where a new trial motion is premised upon alleged new evidence that a conviction was obtained by perjured testimony when the government's use of that testimony was unwitting. In that situation, <u>Huddleston</u> requires the defendant to meet the "actual probability of acquittal" standard.

The second category involves the different types of <u>Brady</u> violation cases, where it is alleged that the government withheld exculpatory evidence. There, a defendant must show that there is a "reasonable probability" that the missing evidence would have changed

-10-

the result.  In contrast, the "reasonable likelihood that the false testimony could have affected the judgment of the jury" standard applies where it is alleged that the government knowingly used perjured testimony to obtain a defendant's conviction.  Although the Supreme Court has not described whether there is a difference between the "reasonable likelihood" and "reasonable probability" standards, we believe they are equivalent.  In the end, both standards are concerned with whether defendants received a fair trial resulting in a verdict worthy of confidence.  See Strickler, 527 U.S. at 298 (concurring opinion); see also Webster's Third New Int'l Dictionary 1310 (1993) (defining "likelihood" as "probability").  As Strickler explains, not every violation by prosecutors of their duty to pursue truth "necessarily establishes that the outcome was unjust."  527 U.S. at 281.

We turn to the merits of González's new trial motion.

B.  The Alleged Perjured Testimony

1.  Testimony of Luz Marina Giraldo

As to Giraldo's testimony, González raises at least a colorable claim that, if her testimony was perjured, then the government presented testimony it knew to be perjured.[1]  González

---

[1]    A finding that there is a colorable claim the government knowingly used perjured testimony is the necessary predicate for asking whether the Strickler/Kyle/Bagley standard applies.  Here, the district court did not make an express finding about whether Giraldo's testimony was perjured, and thus did not find whether the government's use of the

offered the sworn statement of a co-inmate, Daniel Ortiz Medina, that

Medina had overheard Giraldo telling González that the prosecutor had

pressured her to testify to details about González's involvement in

drug trafficking, even though that testimony was false, and that the

prosecutor told Giraldo that she would receive twenty-five years in

prison if she refused to so testify but would receive only a five year

sentence if she cooperated. The matter of perjury is not a matter of

inference. Rather, the material witness herself is reported to have

said that she was pressured by the government to give false testimony.

An affidavit from a second inmate, Ernesto Padilla Almestica, recounted

the same conversation.

Because González makes a colorable claim that the government

knowingly used perjured testimony by Giraldo, we apply the

Strickler/Kyle/Bagley standard and ask whether there is any reasonable

likelihood or probability that the proffered evidence that Giraldo's

testimony was false could have affected the jury's judgment. We think

not. First, the evidence of perjury is itself weak; it depends on a)

the credibility of two convicted felons, and b) believing that Giraldo,

_____

testimony, if perjured, was knowing. (We have been informed that
Giraldo had been deported by the time of the new trial motion and was
unavailable to the court.) Instead the court concluded that González
failed to show that there was a "reasonable probability" that Giraldo's
testimony would result in acquittal. Thus, we cannot avoid the
question. Cf. Josleyn, 206 F.3d at 155 n.11 (where the district court
expressly finds that a defendant has not shown the statements to be
perjury, court need not further consider application of lower
standard).

having to face González after he was convicted, was not simply making excuses based on a fiction.

Second, the sheer volume of evidence of González's drug trafficking and money laundering activities rules out any reasonable likelihood that the jury's ultimate decision was affected by Giraldo's testimony. This was not a close case. Several members of González's organization besides Giraldo testified about numerous occasions during 1991 and 1994 on which González imported drugs from Colombia into Puerto Rico and directed the distribution of those drugs in Puerto Rico and New York. Numerous law enforcement agents corroborated specific events of these drug importation and distribution activities. Moreover, González's guilt was supported by documentary evidence and out of his own mouth; there were tape recordings of González making inculpatory statements about his drug trafficking and money laundering activities. We also note that Giraldo's alleged recantation indicates that she lied about González's importation of cocaine, but that she was, indeed, involved in González's marijuana trafficking activities; thus, the damage done by Giraldo's purportedly false testimony is limited to the effect of her testimony about the extent of González's activities, and does not put into doubt that González was in fact involved in drug trafficking. Viewing the evidence as a whole (including the other Brady errors discussed later), there is no reasonable likelihood or probability that false testimony, if any, by

Giraldo caused the jury to reach an outcome that it might not otherwise have reached.

2.   Testimony of Roberto Garraton

We analyze González's new trial motion based on newly discovered evidence of allegedly perjured testimony by Garraton under the traditional Rule 33 "probability of acquittal" standard, as González does not raise any colorable claim that the government knew Garraton's testimony to be false, assuming it was false.  No inference of government knowledge of perjury arises from the mere fact of a convict's hearsay report that a material witness recanted testimony.

The district court cited two infirmities in González's claim. First, the court "viewed with considerable skepticism" González's evidence of Garraton's recantations, which consisted of affidavits by an inmate to whom Garraton allegedly confessed his perjury.  More important, the court doubted Garraton's recantation because his testimony as to González's role in the drug trafficking conspiracy was corroborated by other trial witnesses, including law enforcement officers, and by documentary evidence.

The substantial amount of evidence supporting González's conviction described above, apart from the testimony of Garraton, means we cannot say that the district court manifestly abused its discretion in denying González's motion for a new trial on the basis of evidence that Garraton testified falsely at González's trial.  The district

-14-

court has "broad power to weigh the evidence and assess the credibility of both the witness who testified at trial and those whose testimony constitutes 'new' evidence." United States v. Montilla-Rivera, 115 F.3d 1060, 1067 (1st Cir. 1997) (quoting Wright, 625 F.2d at 1019).

González argues that the court, at least, should have held a hearing on the question whether the witnesses' testimony was false. But in similar circumstances, we have said that a hearing on post-conviction motions is not necessary where a defendant's claim is "conclusively refuted as to the alleged facts by the files and records of the case." United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989) (internal quotation marks omitted).[2] Here, as the district court found, ample evidence supports the jury's verdict, and so González has failed to show that the alleged new evidence of perjury, under either standard, warrants a new trial.

C.  The Alleged Withholding of Evidence/Prosecutorial Misconduct

González's alternative theory in support of his motion for a new trial is that the government failed to disclose the extent of Giraldo's cooperation with prosecutors in a case in the Southern

_____

[2]     We also note that González waited to file his motion until one of the alleged perjurers was no longer within the reach of the court.  It appears that the conversations reported were shortly after the 1996 trial, but no motion was filed until June of 1999, three years after trial.  (This was also over a year after this court affirmed González's conviction in his appeal from an earlier unsuccessful new trial motion, which was based on, inter alia, faulty jury instructions. See United States v. González-González, 136 F.3d 6 (1st Cir. 1998)). González is in a poor position to complain about a lack of a hearing.

District of Florida, violating its obligations under Brady to produce to defendants exculpatory and impeachment evidence in its possession. See Brady, 373 U.S. at 87; see also Bagley, 473 U.S. at 676; Josleyn, 206 F.3d at 151. González also charges the prosecution with misconduct based on inaccurate statements made to the district court about Giraldo's cooperation.

The record in this case as to the government's conduct, dubious perjury allegations aside, is not exemplary. The district court had good reason for its assumption that the evidence withheld by the government qualifies as Brady material. Secondly, as discussed below, the prosecutor was either careless or made a misrepresentation to the court.

Giraldo testified against González at his trial in February, 1996. Giraldo had entered into a proffer immunity agreement with the Southern District of Florida United States Attorney's Office on June 29, 1995, as to her criminal conduct in Florida; she was debriefed on June 30 and July 6, 1995, which debriefing the FBI summarized in a 302 report on July 8, 1995; and on August 22, 1996, Giraldo entered into a cooperation/plea agreement with the government. The government did not disclose Giraldo's proffer agreement or the FBI report,[3] evidence

_____

[3] Not only did the government fail to voluntarily produce the information to González, but also it did not produce the 302 report to the district court (although it did, in a footnote to its reply, offer to produce it for in camera review). Instead, the government submitted an affidavit of an FBI agent stating that the report was limited to

-16-

González could have used in an effort to impeach Giraldo's testimony. Undisclosed impeachment evidence, "if powerful enough, could constitute grounds for a new trial." United States v. Dumas, 207 F.3d 11, 16 (1st Cir. 2000).

The question, then, is whether there is a reasonable probability that the jury, had it known the true extent and earlier date of Giraldo's cooperation with the government, would have reached a different verdict. We think not. The jury knew that Giraldo was cooperating with authorities in Florida. As the district court found, González "thoroughly cross-examined [Giraldo] as to her cooperation with the prosecutor's office in Miami" and her credibility was "impeached by questioning about her expectations of lenient treatment." United States v. González- González, 106 F. Supp. 2d 269, 275 (D.P.R. 2000). Thus, the undisclosed evidence was cumulative. Although the FBI report should have been turned over to González, the fact that it was not did not deprive him of a fair trial, "understood as a trial

---

Giraldo's debriefing relative to the Florida indictment. Inexplicably, the government persisted in its contention that the report was not Brady/Giglio material, and at the time of oral argument before this court, still had refused to produce it to González, although the government was unable to identify any reason why the report should not be disclosed. It took an order from this court before the government turned the report over. A criminal defendant is entitled to exculpatory evidence, including impeachment evidence, in the government's possession, and is not expected to take the government at its word as to the materiality of that evidence.

Having viewed the report for ourselves, we are satisfied that Giraldo's debriefing was limited to the Florida investigation.

-17-

resulting in a verdict worthy of confidence." Strickler, 527 U.S. at 290 (internal quotation marks omitted).

That does not end our inquiry, however, as González also makes a troubling charge of prosecutorial misconduct. The same government prosecutor who on June 30, 1995, had filed a motion notifying the court of Giraldo's scheduled debriefing, told the court on February 7, 1996, during González's trial, that Giraldo "has not yet been debriefed [in the Florida case] as of yet to my knowledge." Yet at the time of this statement Giraldo had been debriefed some seven months earlier. Moreover, González claims that the same prosecutor failed to correct Giraldo's inaccurate testimony about the timing and extent of her interactions with the government, which González says the prosecutor knew to be false.

González's complaint is not frivolous; the prosecution, at the least, was careless. But the remedy of a new trial is not necessarily in order whenever a court finds misconduct. "The determination of whether prosecutorial misconduct has so poisoned the well that a new trial is required involves the weighing of several factors: (1) the severity of the misconduct; (2) the context in which it occurred; (3) whether the judge gave any curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendant." United States v. Rodriguez-De Jesus, 202 F.3d 482, 485 (1st Cir. 2000) (internal quotation marks and

citations omitted).  Taking a "balanced view of the evidence in the record," id., we think that the misinformation about the extent and timing of Giraldo's cooperation, which at best would have provided further impeachment evidence, did not deprive González of a fair trial given the volume of evidence in support of his conviction.

The denial of González's motion for a new trial is affirmed.