**UNITED STATES of America, Plaintiff,**

v.

**Ramiro COLON–MUÑOZ, Jose F. Blasini–Lluberas, Defendants.**

**No. CR.95–079(PG).**

United States District Court, D. Puerto Rico.

April 24, 2002.

Judge Juan M. Perez–Gimenez, for Georgiana Ortiz–Dexter (0), claimant.

Roberto Boneta, Munoz Boneta Gonzalez Arbona, Benitez & Peral, San Juan, PR.

Jorge E. Vega–Pacheco, U.S. Attorney's Office, San Juan, PR, for U.S.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is Defendant Ramiro Colón–Muñoz's "Motion for Dismissal of Counts One, Six, Seven, Eight and Nine or, in the Alternative, for a New Trial." (Docket No. 364.) Defendant José F. Blasini–Llubera's "Motion for New Trial" is also before the Court. (Docket No. 365.) The United States has filed an "Opposition to Defendant's Ramiro L. Colón–Muñoz and Jose F. Blasini–Llubera's Motion for New Trial." (Docket No. 372.) Defendant José F. Blasini–Lluberas joins the arguments made by co-Defendant Ramiro Colón–Muñoz in his Motion for New Trial and the affidavit attached thereto. The Court will therefore treat co-Defendant Blasini–Lluberas' Motion as identical to co–Defendant Ramiro Colón–Muñoz. For the reasons set forth below, the Motions for a New Trial are **DENIED.**

### BACKGROUND

This case is before the undersigned after a trial and appeal before the First Circuit. The appellate court vacated the judgment as to Counts Two, Three, Four, Five, Eleven And Twelve and ordered the District Court to enter a judgment of Acquittal (*See* Docket No. 394.) The judgment was affirmed as to Counts One, Six, Seven, Eight and Nine and the matter was remanded to the District Court for re-sentencing. *See United States v. Colón–Muñoz,* 192 F.3d 210, 230 (1st Cir.1999). This matter was reassigned to the undersigned pursuant to Misc. 02–55. (*See* Docket No. 392.)

Defendant brought this Motion for a New Trial pursuant to FED.R.CRIM.P. 33 alleging that the testimony of a witness in the jury trial was called into doubt by an affidavit provided by Erasmo Rivera Lebrón, Certified Public Accountant (hereinafter "Rivera Lebrón"). The affidavit provided by Rivera Lebrón purported to impeach the trial testimony of Doña Consuelo García Gómez and her brother.

### STANDARD FOR A MOTION FOR A NEW TRIAL

Different standards exist under which to adjudicate a Motion for a New Trial in a criminal case.

Generally, when a defendant makes a Rule 33 motion based on newly discovered evidence, it must be shown that: "(1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of defendant." *United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980). If the defendant fails to meet any of these factors, the motion for a new trial must be denied. *United States v. Falu–González,* 205 F.3d 436, 442 (1st Cir.2000). Different considerations are taken into account in making determinations as to the third and fourth parts depending on the grounds of the motion. The First Circuit has described in *United States v. Josleyn,* 206 F.3d 144, 151 (1st Cir.2000) the differing standards based on the behavior of prosecutors.

In routine Rule 33 motions based on newly discovered evidence that involve no alleged prosecutorial misconduct, "the defendant must show that the new material evidence 'will probably result

in an acquittal.' " *United States v. González–González*, 258 F.3d 16, 20 (1st Cir. 2001) (quoting *United States v. Wright*, 625 F.2d 1017, 1019). If on the other hand, the defendant alleges that prosecutors acted in violation of *Brady*, then the less onerous standard in *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), applies to defendant's Rule 33 motion. In accordance with *Kyles*, a defendant must show that a reasonable probability exists that, had the evidence been disclosed, the result of the trial would have been different, and whether or not the absence of the evidence resulted in a verdict worthy of confidence. *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555; *see also González–González*, 258 F.3d at 20. Other variations of the standard exist for a Motion under FED.R.CRIM.P. 33, including the standard set forth in *United States v. Huddleston*, 194 F.3d 214 (1st Cir.1999), which is applied when a prosecutor unwittingly used perjured testimony. *Huddleston*, 194 F.3d at 221–22. In that instance, the defendant must overcome the presumptive validity of the verdict by showing that the force and content of the newly discovered evidence "are such that an acquittal would probably result upon retrial." *González–González* 258 F.3d at 21 (quoting *Huddleston* 194 F.3d at 221).

Having reviewed the standards for examining a motion for new trial in a criminal case, the Court now turns to the merits of Ramiro Colón–Muñoz's motion.

### DEFENDANT'S RULE 33 MOTION

Defendant alleges in his motion that evidence, brought to the United States Attorney's Office attention show that a witness against Defendant perjured herself at trial. The gist of the argument is that the idea to structure one of the transactions as a loan originated with Doña Consuelo García Gómez. (Mot. for New Trial at. 10.) Defendant attempts to show that the affidavit provided by Don Erasmo Rivera Lebrón shows two things: first, that prosecutors in this matter, specifically United States Attorney Gil and Assistant United States Attorney Vega–Pacheco, deliberately withheld exculpatory information in violation of *Jenks* and *Brady;* and second, that both prosecutors deliberately structured testimony so that exculpatory evidence would not surface during trial testimony.

Obviously, Defendant seeks to accuse prosecutors of misconduct in order to benefit from the more lenient standard set forth in *Kyles*. However, the Court need not indulge all allegations of prosecutorial misconduct for purposes of a Rule 33 motion, particularly when they are so patently refuted by the record. In order to make this point obvious, the Court will proceed to examine the trial transcripts.

To begin with, Defendant makes reference to Rivera Lebrón's FBI 302 interview report having been "misplaced." Defendant's counsel indicates that she has exhaustively searched the "extensive trial and appellate files in an attempt to locate Mr. Rivera Lebrón's FBI 302 [report] which was referred to during his testimony at trial." (Mot. for New Trial at fn. 6.) Whether or not the FBI 302 statement has been misplaced is most assuredly Defendant's attorney's fault and not the United States Attorney's Office. It is clear that Ms. Sandoval, Defendant's attorney at trial, had in her possession the FBI 302 report she has now so conveniently misplaced. (Docket No. 193 at 139–143.) Ms. Sandoval has attempted to impute prosecutorial misconduct on the United States Attorney's Office by inferring that the prosecutors mishandled or even destroyed the FBI Report. In fact, she used it extensively in arguing an objection to introduction of evidence summarized in the FBI 302 because she believed that they were

legal conclusions Rivera Lebrón was not qualified to make. (Docket No. 193 at 140.) Ms. Sandoval attempted to use part of the report to exclude Mr. Rivera Lebrón's testimony which characterized Defendant's participation in the transaction as a conflict of interest. (Docket No. 193 at 140.) Ms. Sandoval stated

> let the record reflect that I'm showing the Honorable Judge Cerezo a 302 that was delivered to us as part of Jenx[sic] material. I think the government has a right to go into what's contained in paragraph two which is what he [Rivera Lebrón] advised her as a CPA. But the next paragraph is a legal opinion which he is not qualified to express in this courtroom.

(Docket No. 193 at 140.)

The trial testimony belies Defendant's argument in his Motion for a New Trial, which is basically that Mr. Rivera Lebrón was in a position to know whether or not Mrs. García Gómez knew that she was taking out a loan before the loan was signed. According to Mr. Rivera Lebrón, as stated in the affidavit provided with the Motion to Dismiss, it was

> [Mrs. García Gómez] who insisted that Ramiro Colón would not meet his obligations for the payment of the debt and she thought that if they did not find a way to rope him in they [the family] would end up with the farm again; something she definitely did not want. From there the idea arises to take the money out as a loan in order to pressure and force Ramiro Colón to comply with the payment.

(Docket No. 364 Ex. A) (translation ours.)

This statement is the new evidence upon which Defendant predicates a new trial should be held. First of all, the Defendant has not shown that this evidence was unavailable to him at the time of trial, and that even if it were the unavailability

would be because of the prosecutors. It is clear from the trial transcript that, on the day of Rivera Lebrón's testimony, Ms. Sandoval had in her hands the FBI 302 report. Said report details the FBI's interviews of the witness who now attempts to impeach himself through the affidavit submitted. Pertinent parts of that report read as follows, "RIVERA was not present [at Ponce Federal Bank]. That same evening GARCIA returned to RIVERA and showed him a $100,000 check that she received from PFB. GARCIA at this time made no mention of taking out a loan in order to receive the money. *RIVERA pointed out to GARCIA that she had just taken out a loan and that she would have to pay the interest.* He advised GARCIA that she would be wise not to use the proceeds of the loan until RAMIRO canceled the voluntary mortgage . . . ." (Docket No. 372 Ex. 2.) (emphasis ours).

■ In-court testimony by the witness shows that Ms. Sandoval had ample opportunity to cross-examine him about whom had come up with the idea to structure the particular transaction relating to La Esperanza as a loan. In fact, in his trial testimony Rivera Lebrón stated that on April 19, 1988, the day when García Gómez had received the $100,000 payment from Ramiro Colon, he could not recall when he spoke to her. (Docket No. 193 at 158–159.) Rivera Lebrón could not remember in 1996 when he had talked to García Gómez, whether before or after the sham loan was issued.

Q: [by U.S. Attorney] Now, on April 19 of 1988, where did Doña Consuelo stay?

A: [by Rivera Lebrón] My house.

Q: All right. Did you see her on the 19th?

A: I don't think so. Well, yes. I don't recall whether or not we talked.

Q: Didn't you learn on that occasion that Doña Consuelo had received one hundred thousand dollars?

A: Well, possibly that night she may have told me she received the money....

[continues testimony]

Q: Did you examine the documents, Don Erasmo, on that day pertaining to the receipt of the one hundred thousand dollars?

A: Not that night. When she handed me the copy of the hundred thousand dollars she had received.

Q: What, if anything, did you notice when she handed you the copy of the one hundred thousand dollar check?

A: That on the same document it said a loan such and such number and the hundred thousand.

(Docket No. 193 at 158–59.)

In fact, Judge Cerezo herself addressed the prosecution's theory of the case in an exchange with A.U.S.A. Vega–Pacheco. Judge Cerezo stated "[s]o what he is saying is that Don Erasmo Rivera as her CPA actually perceives when he sees was the loan document, that there is something astray there or illegal or irregular, whichever word you want to use, but there was something irregular there, and he advises her of the fact." (Docket No. 193, at 145.) A.U.S.A. Vega–Pacheco then answered "That's right." (Docket No. 193, at 145.) Subsequently, Mr. Vega–Pacheco stated that: "The theory of defendant is that this is the normal course of business...." (Docket No. 193 at 145.) Ms. Sandoval later addressed all the arguments made by this witness as to whether or not García Gómez knew or not that the document she was signing was a loan. (Docket No. 193 at 148.) In conjunction with the categorical denial that García Gómez gave at trial that she did not think it was a loan, but rather money owed to her, (Docket No.

193 at 17), the Court does not believe that the affidavit provided by Rivera Lebrón is enough to warrant a new trial of this Defendant under the standard set forth in *United States v. Wright.*

Stripped to its bare bones the affidavit provided by Rivera Lebrón is merely impeachment evidence of his trial testimony as opposed to offering new evidence. Rivera Lebrón testified as witness and was cross-examined by Defendant's attorney. Circuit courts, including the First Circuit, have not "been sympathetic to new trial claims based solely on the discovery of additional information useful for impeaching a government witness." *United States v. Sepulveda,* 15 F.3d 1216, 1220, n. 5 (1st Cir.1993); *see also United States v. Formanczyk,* 949 F.2d 526, 531 (1st Cir.1991); *United States v. Burroughs,* 830 F.2d 1574, 1578–79 (11th Cir.1987). The fact that the evidence is impeachment evidence as opposed to material evidence means that the third prong of *Wright* is not met in this case. Finally, the Defendant cannot show that this impeachment evidence would result in an acquittal upon retrial.

■ Defendant asserts a separate ground in his Motion for a New Trial. He insists that United States Attorney Gil and A.U.S.A. Vega–Pacheco acted improperly at trial when they failed to elicit testimony from García Gómez relating to the word "apartment" in a loan application. (Mot. for New Trial at 11.) Ms. Sandoval argued at trial that prosecutors had to elicit information relating to that word in the loan in order to demonstrate criminal *scienter.* The trial court was unpersuaded by this argument. Defendant further alleges that the prosecution's case was predicated on the fact that the word "apartment" was false and was meant to shield the sham transaction from scrutiny. (Mot. for New Trial at 12.) Defendant argues

that the act of refraining from asking about the word apartment constitutes either intentional or negligent misconduct on behalf of the prosecution. (Mot. for New Trial at 15.)

It is pertinent to highlight that Defendant has cited no case or authority or analogous matter where a prosecutor was considered to have committed an infraction because he did not inquire into a particular word on a document introduced as evidence. In fact, Defendant only states that "[d]efense attorneys never expected Don Erasmo [Rivera Lebrón] to contradict the government's theory because the *Jencks* [material] [sic] given to counsel was limited and gave no inkling that Mr. Rivera Lebrón would relate, if asked, information favorable to the [D]efendants." (Mot. for New Trial at 15.) The Court is unpersuaded by Defendant's version of events. In addition, this evidence is neither material to culpability nor exculpatory, and therefore, the Motion for a New Trial based on the prosecution's restraint in not asking their own witness a question cannot succeed.

The Court of Appeals found that there was "ample evidence" that a reasonable jury

> could infer that Colón was personally involved in the illegal transaction with Consuelo García–Gómez, just as he had been personally involved in arranging loans to other members of the Usera family with the help of Blasini. This wrongful use of bank money to satisfy a private debt, carried out with an intent to deceive the bank about the true nature of the transaction, involved all the essential elements of the crime misapplication.

*United States v. Colón–Muñoz,* 192 F.3d at 220.

█ The factors discussed above persuade the Court that this Defendant has not met the burden set out in *United States v. Wright.* First, it has been established that the evidence was not concealed in violation of the prosecution's duties in *Brady;* second, the document on which Defendant relies to accuse the United States Attorney's Office of misconduct was available to her before and during trial; third, the witness which now seeks to impeach his own testimony, along with García Gómez and her brother's, has waited five years after trial to contradict his testimony; fourth, the two witnesses he seeks to impeach are now dead; and last, the Court of Appeals found ample evidence to uphold the jury verdicts rendered against Defendant. Ever mindful that motions under Fᴇᴅ.R.Cʀɪᴍ.P. 33 should be looked upon with caution and are generally disfavored, this Court finds that the Defendant cannot show that the introduction of such evidence would result in an acquittal, and therefore deny his request.

## DEFENDANT'S ACCUSATIONS OF PROSECUTORIAL MISCONDUCT

Defendant's Motion for New Trial attempts to focus on alleged instances of prosecutorial misconduct in order to persuade the Court the motion should be granted. Defendant, through his attorney, makes several unverified and highly charged claims of improper witness coaching/bullying, withholding of documents in violation of *Brady* and an allegedly concerted effort to deny Defendant's right to a fair trial.

First, the fact that Rivera Lebrón provided the affidavit which contradicted his trial testimony twelve years after the event took place and four years after the jury verdict is a factor that must be considered. In addition to that, the fact that the putative testimony was provided only after the only two people who could refute

it were dead weighs heavily against Rivera Lebrón's credibility.

In the end, Defendant's fallacious and contumacious arguments are consistently refuted by the record. Defendant's attorney has engaged in conduct that is inconsistent with her obligations as an officer of the Court. Defendant's argument could only succeed if the FBI 302 report were unavailable, since the affidavit provided as newly discovered evidence is not enough to warrant a new trial. Defendant has suggested in every conceivable manner that the prosecution acted in bad faith and in violation of their ethical obligations. It is unnecessary for Defendant's attorney to ravage Mr. Gil and Mr. Vega–Pacheco's reputation in order to vigorously defend her client. Ms. Sandoval has engaged in the type of disrespectful behavior that disregards not only the judicial process but this Court's integrity. As an officer of the Court she has an obligation to act with respect and dignity, with a view to judicial integrity. She has, however, managed in every way to impute misconduct on the prosecution unsupported by factual or documentary evidence. This conduct is unacceptable and will not be permitted to flourish in this Court.

## CONCLUSION

For the reasons stated above, both Defendants' Motions for a New Trial (Docket Nos. 364 and 365) are **DENIED**. The Motion by Ramiro Colón–Muñoz to Dismiss the pending counts of the Indictment (Docket No. 365) is **DENIED**.

**SO ORDERED.**