*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0001P (6th Cir.)
File Name: 00a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

*v.*　　　　　　　　　　No. 98-4474

DOUGLAS TURNS,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00013—John D. Holschuh, District Judge.

Argued: December 7, 1999

Decided and Filed: January 5, 2000

Before: COLE and GILMAN, Circuit Judges; CARR,[*]
District Judge.

---

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** J. Michael Marous, OFFICE OF THE U.S. ATTORNEY, Columbus, Ohio, for Appellant. Gary W. Deeds, Columbus, Ohio, for Appellee. **ON BRIEF:** J. Michael Marous, OFFICE OF THE U.S. ATTORNEY, Columbus, Ohio, for Appellant. Gary W. Deeds, Columbus, Ohio, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. This is an appeal from the district court's order granting Douglas Turns's motion for a new trial. Turns was convicted on one count of knowingly possessing and transferring a machine gun in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Turns timely filed a motion for a new trial, alleging that his sister, Starlet Turns, possessed "newly discovered" evidence. In two affidavits filed within days of Turns's conviction, Starlet Turns claimed that her former boyfriend was the owner of the machine gun and that her brother was unaware of its nature when he pawned it at her request. After reviewing both sides' briefs and holding an evidentiary hearing, the district court granted Turns's motion. The government filed this timely appeal. For the reasons set forth below, we **REVERSE** the district court's order granting a new trial, **REINSTATE** Turns's conviction, and **REMAND** for sentencing.

## I. BACKGROUND

During the summer of 1995, Turns attended a gun show in Hilliard, Ohio with his sister's boyfriend, Anthony Rogers. The government alleges that Turns knowingly purchased a fully automatic M-16 rifle at the gun show and later sold it to a pawn shop. Turns, however, claims that Rogers was the one

who purchased the M-16, and that the next time that he saw the rifle was when his sister asked him to pawn it on Rogers's behalf. He testified that he complied with his sister's request and sold the M-16 under the belief that it was a semi-automatic firearm, not knowing that the internal mechanism of the M-16 had been altered (the rifle was originally the non-military version of the M-16) to convert it to a fully automatic weapon. Turns claims that he first became aware that the M-16 was fully automatic when his sister asked him to retrieve the "automatic rifle" from the pawn shop. He was unsuccessful in doing so. The M-16 eventually ended up in the hands of the government, and Turns was charged with knowingly possessing and transferring a machine gun.

Turns does not dispute that he possessed and eventually transferred the firearm described in the indictment. Instead, he argues that he was unaware at the time that the firearm was a machine gun. At trial, the central issue was whether Turns knew that the M-16 was a fully automatic weapon when he sold it to the pawn shop.

Although Turns claimed that he was unaware of the M-16's automatic capabilities, five witnesses testified for the government and directly contradicted Turns's testimony regarding ownership of the firearm and his knowledge that it was a machine gun. Two were law enforcement officers who testified that Turns's statements during their separate conversations with him revealed his knowledge that the rifle in question was fully automatic. The clerk at the pawn shop where Turns sold the fully automatic rifle also related that "he [Turns] told me that the gun was fully automatic . . . [and] he had test fired it." In addition, one of Turns's friends testified that Turns had shown him the fully automatic rifle and had explained how the weapon functioned, which Turns referred to as a "machine gun." Finally, Rogers took the stand to say that Turns had shown him how to operate the selector switch on the rifle, which enabled the rifle to be fired in fully automatic mode. Even Turns's own sworn affidavit, tendered in 1995, states that he recognized that the weapon in question was an M-16. This is significant because his former military

training had taught him that the M-16 is fully automatic. In addition to its direct evidence, the government also impeached Turns by noting numerous inconsistencies between Turns's pretrial statements and his testimony at trial. The jury found the government's evidence convincing and convicted Turns on April 23, 1998.

Turns filed a motion for a new trial three weeks later, based on what he characterized as newly discovered evidence. Specifically, he submitted two affidavits from his sister that tended to exonerate him, both of which were prepared within a few days after his conviction. The district court held a hearing on the motion on September 15, 1998. At that hearing, Turns's sister testified that the M-16 belonged to Rogers, and that she had asked Turns to pawn it on Rogers's behalf. Turns's sister also stated that after she had given the firearm to Turns, Rogers told her that the M-16 was a machine gun and that he wanted it back.

Starlet Turns further said that at the time of her brother's trial, she had told Turns that she would not testify truthfully on his behalf because she was involved in an intimate relationship with Rogers and did not want to place her boyfriend in jeopardy. In countering the testimony of Turns's sister, the government argued that the contents of her affidavits were at best "newly available" evidence, not "newly discovered" evidence, and thus were not sufficient to warrant a new trial.

The district court found that Turns was aware of the information contained in his sister's affidavits at the time of his trial, but that he did not "discover" her willingness to testify truthfully until afterwards. In so ruling, the district court reasoned as follows:

> Prior to trial, not only did Starlet refuse to testify, she told the Defendant that she would perjure herself if she were forced to testify. While the Court recognizes that this is not a case in which the Defendant has discovered the identity of a new witness, in a realistic sense and as a practical matter, this is a case in which there is newly

The Ninth Circuit dealt with these policy concerns in *Baumann v. United States*, 692 F.2d 565 (9th Cir. 1982), where the defendant sought a new trial based upon an uncalled witness's "newly discovered" evidence. In denying the defendant's motion for a new trial, the court reasoned as follows:

> Baumann's evidence is not newly discovered because allowing criminal defendants to raise such allegations after a judgment of conviction has been entered . . . would permit them to "sandbag" the fairness of the trial by withholding or failing to seek material, probative evidence and later attempting to collaterally attack their convictions under Fed. R. Crim. P. 33 . . . .

*Id.* at 580. For the same reasons, allowing Turns a new trial on the basis of his sister's affidavits would constitute a "sandbagging" of the judicial process.

In summary, Turns failed to meet his burden of proof on the first prong of *Barlow* as a matter of law. The district court thus clearly abused its discretion when it granted Turns's motion for a new trial. We therefore reverse the district court's order on this basis and need not address the government's remaining arguments.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the district court's order granting a new trial, **REINSTATE** Turns's conviction, and **REMAND** for sentencing.

than it would be without the evidence." The only fact that was of consequence at Turns's trial was whether Turns knew that the M-16 was an automatic rifle on the day he pawned it. What Turns's sister would or would not have said on the witness stand about this key fact was certainly relevant to Turns's decision on whether to call her, but is not itself "newly discovered" evidence under Rule 33.

In the instant case, Turns was aware at the time of trial that his sister possessed the information set forth in the two affidavits she submitted in support of his motion for a new trial. Turns had even notified his attorney prior to trial about the information his sister possessed and "had implored his sister to come forward and testify truthfully." Because Turns and his counsel believed that she would not tell the truth, they made a strategic decision not to call her. Based on the reasoning in *Glover*, the proposed testimony of Turns's sister is at best "newly available" evidence, not "newly discovered" evidence. Turns had the option of subpoenaing his sister and, if necessary, he could have attempted to discredit any perjured testimony.

Moreover, it is not clear that the proposed testimony was even "newly available," because Turns's sister testified at the motion hearing that she would have told the truth if she had been called to the stand at trial, despite having told Turns she would not do so. The fact that Turns's sister now claims that she wants to testify for her brother does not mitigate Turns's deliberate choice of omitting her testimony at trial. If the district court's decision was allowed to stand, then other defendants would be encouraged to file motions for new trials based solely upon the existence of previously uncalled witnesses who, after learning of the defendant's conviction, state for the first time that they are willing to testify truthfully on the defendant's behalf. Such a precedent would also encourage defendants to hold a witness or two in reserve, knowing that if they lost at trial, they might get another chance by producing sworn affidavits from their reserve witnesses.

discovered evidence: to wit, the truthful testimony of a key witness for the defense, evidence that was not previously available to Defendant. Accordingly, the Court finds that the first requirement of *Barlow* has been met.

After finding that Turns had also met all of the remaining requirements set forth in *United States v. Barlow*, 693 F.2d 954 (6th Cir. 1982), to establish a proper foundation for newly discovered evidence, the district court granted his motion for a new trial. The government timely appealed.

## II. ANALYSIS

### A. Standard of review

Motions for a new trial based upon newly discovered evidence are disfavored and should be granted with caution. *See United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). When such a motion is granted, however, the decision will not be disturbed unless the district court clearly abused its discretion. *See United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). A district court clearly abuses its discretion when it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 895 (6th Cir. 1996) (internal quotation marks and citation omitted); *see Steinhoff v. Harris*, 698 F.2d 270 (6th Cir. 1983) (addressing a Rule 60(b) motion in a social security case and treating the phrases "abuse of discretion" and "clear abuse of discretion" the same for the purpose of review).

### B. The district court clearly abused its discretion when it granted Turns's motion for a new trial

When a defendant makes a motion for a new trial based upon newly discovered evidence, he must show that (1) the evidence was discovered after the trial, (2) it could not have been discovered earlier with due diligence, (3) it is material and not merely cumulative or impeaching, and (4) it would likely produce an acquittal if the case was retried. *See*

*Barlow*, 693 F.2d at 966.  In the case at bar, the main focus is on the first prong of *Barlow*.

In *United States v. Glover*, 21 F.3d 133 (6th Cir. 1994), this court elaborated on what it means for evidence to be newly discovered after trial.  The defendant in *Glover* was convicted of possessing cocaine with the intent to distribute.  He then filed a motion for a new trial based upon newly discovered evidence.  To support his motion, the defendant submitted an affidavit from a witness who claimed to have placed the cocaine in the defendant's kitchen stove where it was eventually found by the police (the witness allegedly had a key to the defendant's apartment).  At the defendant's trial, the witness had asserted his Fifth Amendment privilege against self-incrimination and had refused to testify.  Following the witness's conviction on separate drug-related charges, the witness changed his mind and decided to testify on the defendant's behalf.  In affirming the district court's denial of the defendant's motion for a new trial, the court in *Glover* held as follows:

> Glover is unable to establish that the evidence offered by [the witness] "was discovered after the trial" and thus he fails to carry his burden of proof.  Glover acknowledges that he was well aware of [the witness]'s testimony prior to trial. . . .  While [the witness]'s testimony may have been newly available, it was not in fact "newly discovered evidence" within the meaning of Rule 33.

*Id.* at 138.  For other cases reaching the same conclusion, *see Pierce*, 62 F.3d at 825 ("Evidence is not newly discovered when it is necessarily known by the defendant at the time of trial."); *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992) (holding that if a defendant knew about the evidence at the time of trial, he cannot satisfy the newly discovered evidence requirement of Rule 33); *Seago*, 930 F.2d at 489 (holding that evidence known by the defendant at the time of trial cannot constitute "newly discovered" evidence); *United States v. DiBernardo*, 880 F.2d 1216, 1224 (11th Cir. 1989) ("Here, both [defendants] were well aware of [the witness]'s

proposed testimony prior to trial.  Therefore, the testimony cannot be deemed 'newly discovered evidence' within the meaning of Rule 33.").

In all of the above cases, co-defendants or other witnesses threatened to plead or did plead the Fifth Amendment in order to avoid testifying, and then changed their minds after the defendant was convicted.  Although the present case has slightly different facts, the same logic should apply where a witness threatens to lie if called as a witness and then, after trial, decides to testify truthfully on the defendant's behalf.  In fact, it strikes us that a defendant has a stronger argument (although still unavailing) for a new trial when a witness refuses to testify because of the witness's Fifth Amendment privilege than when a witness threatens to lie if called to the stand.  In the latter instance, the witness can still be subpoenaed and forced to answer questions under penalties of perjury, whereas a witness asserting his or her Fifth Amendment privilege cannot be forced to answer any questions that may be self-incriminating.

The key to deciding whether evidence is "newly discovered" or only "newly available" is to ascertain when the defendant found out about the information at issue.  A witness's shifting desire to testify truthfully does not make that witness's testimony "newly discovered" evidence.  *See, e.g.*, *Glover*, 21 F.3d at 138.  Defendants and their counsel frequently have to make strategic choices as to whether to call certain witnesses who have credibility problems or might not testify truthfully.  Our system of justice relies, in large part, on the theory that when a person takes the witness stand and swears to tell the truth, that he or she will in fact do so.

Whether or not a witness will testify truthfully if called to the stand is simply not "evidence" that can be used as a basis to invoke Rule 33 of the Federal Rules of Criminal Procedure.  "Relevant evidence" is defined by Rule 401 of the Federal Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable