**UNITED STATES of America,**
**Plaintiff,**

v.

**Olee Wonzo ROBINSON, Defendant.**

**No. CRIM.93–50028.**

United States District Court,
E.D. Michigan,
Southern Division.

April 15, 2005.

499

Mark Jones, Assistant United States Attorney, Flint, MI, for Plaintiff.

Bruce E. Welch, Roanoke, VA, Suzanna Kostovski, Detroit, MI, for Defendant.

### *MEMORANDUM OPINION AND ORDER ACCEPTING REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTIONS FOR A NEW TRIAL*

GADOLA, District Judge.

## I. INTRODUCTION

Before the Court is the Report and Recommendation of the Honorable Wallace Capel, Jr., United States Magistrate Judge regarding Defendant's motions for a new trial. The Magistrate Judge recommends that this Court deny Defendant's motion for a new trial. For the reasons stated below, the Court will accept the report and recommendation.

## II. BACKGROUND

At the outset, the Court considers it appropriate to review the procedural history of this case. Olee Robinson's case proceeded to a trial by jury before the Honorable Stewart Newblatt. The trial began on November 9, 1993 and ended with a jury verdict of guilty on December 22, 1993. Mr. Robinson was convicted of the following charges:

(1) conspiracy to distribute controlled substances (21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A));

(2) drug-related homicide and aiding and abetting in drug-related homicide (21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2);

(3) making false statements to a federally insured institution (18 U.S.C. § 1956);

(4) engaging in a criminal enterprise (21 U.S.C. § 848);

(5) being a felon in possession of firearms (18 U.S.C. §§ 922(g)(1));

(6) structuring financial transactions to evade reporting requirements (and aiding and abetting in the same)(31 U.S.C. § 5324 and 18 U.S.C. § 2); and

(7) aiding and abetting the distribution of controlled substances (21 U.S.C. § 848(a)(1) and 18 U.S.C. § 2).

Judge Newblatt sentenced Mr. Robinson to an aggregate life term on April 26, 1994. Mr. Robinson appealed his conviction. The Sixth Circuit affirmed the convictions by an order entered September 5, 1996.

Mr. Robinson filed a series of motions for a new trial after the jury verdict. Mr. Robinson filed his first motion for a new trial on January 25, 1994 [docket entry 164]. Judge Newblatt struck this motion on April 8, 1994 [docket entry 173]. Mr. Robinson filed a second motion for a new trial on April 5, 1994 [docket entry 171]. Judge Newblatt denied this motion on May 4, 1994 [docket entry 194].

Mr. Robinson filed a third motion for new trial on May 8, 1995 [docket entry 279]. Judge Newblatt denied this motion without prejudice on June 1, 1995 [docket entry 284]. Mr. Robinson sought reconsideration of this order on June 16, 1995 [docket entry 286]. Judge Newblatt denied the motion for reconsideration in an order dated July 13, 1995 [docket entry 294]. On June 16, 1995, Mr. Robinson filed a notice of appeal of the district court's order denying the motion for a new trial without prejudice [docket entry 287 appealing docket entry 284]. On October 3, 1997, the Sixth Circuit vacated the order denying the motion for a new trial without prejudice and remanded the case for a determination of the motion for a new trial on the merits.

While the third motion for a new trial was on appeal with the Sixth Circuit, Mr. Robinson continued to file additional motions for a new trial. Mr. Robinson filed a fourth motion for a new trial on September 27, 1995 [docket entry 296]. Judge Newblatt denied this motion as moot on August 21, 1997 [docket entry 340]. Mr. Robinson filed a fifth motion for a new trial on November 24, 1995 [docket entry 301], which Judge Newblatt struck on November 28, 1995 [docket entry 302]. Mr. Robinson filed a sixth motion for a new trial on November 30, 1995 [docket entry 303]. Judge Newblatt denied this motion on May 9, 1996. Mr. Robinson filed a seventh motion for a new trial on May 3, 1996 [docket entry 308], which Judge Newblatt also denied on May 9, 1996 [docket entry 310].

Then, on October 9, 1997, after the decision by the Sixth Circuit vacating Judge Newblatt's denial without prejudice of Mr. Robinson's third motion for a new trial, Mr. Robinson filed a motion to consolidate all the pending motions for a new trial [docket entry 347]. Mr. Robinson then filed a "revised" motion for a new trial on October 29, 1997 [docket entry 349].

A variety of motions followed this filing, including a motion for an evidentiary hearing, a motion for bail, and a motion to transfer the case to Detroit. The Sixth Circuit also denied a petition for the writ of mandamus against Judge Newblatt [docket entry 360].

Judge Gadola entered his first order in this case on March 20, 1998, regarding the appointment of counsel for Mr. Robinson [docket entry 363]. Judge Gadola also entered a stipulated order stating that counsel would incorporate all of the issues regarding the motion for a new trial in a new filing and giving the Government 30 days to respond [docket entry 370]. The docket then indicates that the parties

briefed and pursued a motion to vacate sentence pursuant to 28 U.S.C. § 2255, instead of a motion for a new trial [docket entries 385 et seq.].

The motion to vacate sentence was referred to Magistrate Judge Pepe. Magistrate Judge Pepe recommended that the Court deny the motion to vacate sentence [docket entry 420]. Mr. Robinson objected to this report and recommendation [docket entry 421]. Judge Gadola overruled the objections and accepted the report and recommendation *denying the motion to vacate sentence* [docket entry 431]. Judge Gadola also denied a certificate of appealability [docket entry 436]. The Sixth Circuit also denied Mr. Robinson a certificate of appealability on November 30, 1999 [docket entry 466]. After this denial, Mr. Robinson again began filing documents related to a request for a new trial [*see, e.g.,* docket entry 468 "notice by defendant … of hearing on motion for new trial remand order"]. Mr. Robinson also filed a writ of mandamus, which the Sixth Circuit denied on December 7, 2001. The Sixth Circuit also denied Mr. Robinson's request to file a second 2255 motion to vacate sentence on April 4, 2002 [docket entry 487].

The most recent history in this case was recounted in this Court's order of April 2, 2003, which granted an extension of time for Mr. Robinson to file a reply brief. The Court stated:

> On December 10, 2002, Defendant's counsel, Bruce Welch, filed several motions on Defendant's behalf. The Government filed its response to these motions on February 21, 2003. The Government's response also addresses a number of motions for new trial previously filed in this matter. Defendant's reply brief was due on or before March 7, 2003.
>
> On March 3, 2003, Defendant filed a pro se motion to extend the time to file a reply brief by sixty days, and the Court denied this motion without prejudice on March 4, 2003, because Defendant is represented by counsel. On March 11, 2003, Defendant's attorney, Bruce Welch, filed a motion requesting an extension of sixty days to file a reply brief. On March 14, 2003, the Court granted this motion in part, requiring Defendant to file his reply brief on or before April 7, 2003. The Court noted in its order that Defendant's counsel had not justified his request for a sixty day extension, particularly in light of counsel's admission that he previously had stipulated to a thirty day extension.
>
> On March 17, 2003, Attorney Suzanna Kostovski filed an appearance on Defendant's behalf. Defendant, through Attorney Kostovski, filed the present motion for an extension on March 25, 2003. In this motion, Defendant requests an additional thirty days within which to file his reply brief. Attorney Kostovski asserts that additional time is necessary due to the length of the Government's response brief and the voluminous exhibits submitted in support of the Government's brief. Moreover, Attorney Kostovski states that she did not receive copies of the Government's response brief until March 25, 2003.
>
> In response to this motion, the Government notes that Attorney Kostovski is not a stranger to this case, having filed an appearance on Defendant's behalf on May 19, 1998. The Government submits that Defendant's numerous new trial motions were filed prior to May, 1998, and further, that Defendant's current motions are based largely on these prior motions. Thus, the Government contends that Attorney Kostovski is presumably familiar with the facts of this case. Moreover, the Government notes that Attorney Kostovski has had since

mid-March to assist with the preparation of a reply brief that is due on April 7, 2003....

The Court concludes that Attorney Kostovski has shown good cause warranting a *limited* extension of time. Although Attorney Kostovski only recently filed an appearance in this case, her prior appearance on Defendant's behalf strongly supports the presumption that she is familiar with the facts and therefore does not need a lengthy period of time to review the file in this case. Moreover, Attorney Welch apparently has not withdrawn from the case, and Attorney Kostovski has not suggested that Attorney Welch has been unable to prepare the reply brief. Finally, beyond citing the length of the response brief and exhibits, Attorney Kostovski has not indicated why an additional thirty day extension of time is required to file a *reply* brief, which of course is not a vehicle for raising new claims, but is rather "[a] brief that responds to issues and arguments raised in the brief previously filed by one's opponent." *Black's Law Dictionary* (7th ed.1999). The Court notes, in this regard, that Defendant has not moved for an extension of the five page limit for reply briefs set forth in the Local Rules. *See* E.D. Mich. LR 7.1(c)(3)(B).

Nevertheless, in light of the relatively forgiving "good cause" standard set forth in Rule 45(b)(1)(A), and the Court's interest in complete and accurate briefing in this case, the Court shall grant Defendant a *limited* extension of time within which to file his reply brief. The Court concludes that thirty days from the filing of Attorney Kostovski's most recent appearance is a sufficient amount of time to accommodate Attorney Kostovski. Therefore, Defendant shall file his reply brief on or before April 17, 2003.

Order, Apr. 2, 2003 (docket entry 549) (citations omitted).

Mr. Robinson filed a supplemental brief on June 3, 2003 [docket entry 560]. The Government responded to this supplemental brief on September 5, 2003 [docket entry 566]. On July 23, 2004, the Court referred the motion for a new trial, docket entry 349, to Magistrate Judge Capel. The Magistrate Judge conducted a status conference on the record on November 30, 2004. At the status conference it was suggested that, in order to consolidate all of the motions for a new trial, the Court refer four other motions for a new trial. *See* Nov. 30, 2004 Tr. at 20–22. Although these motions were not reflected as pending in the Court's electronic docketing system, the Court determined that the consolidation and consideration of the additional motions would be appropriate. Consequently, on December 2, 2004, the Court also referred docket entries 279, 296, 303, and 308 to Magistrate Judge Capel.

Magistrate Judge Capel then issued a report and recommendation on the motions on February 24, 2005 [docket entry 592]. The Magistrate Judge recommended denying Defendant's motions. Defendant filed objections through counsel on March 7, 2005. The Government did not file a response to those objections.

## III. DISCUSSION

■ The Court's standard of review for a Magistrate Judge's report and recommendation depends upon whether a party files objections. If a party does not object to the report and recommendation, the Court does not need to conduct a review by any standard. *See Lardie v. Birkett,* 221 F.Supp.2d 806, 807 (E.D.Mich.2002) (Gadola, J.). If a party does object to portions of the report and recommendation, the Court reviews those portions *de*

*novo. Lardie*, 221 F.Supp.2d at 807. The Federal Rules of Civil Procedure dictate this standard of review in Rule 72(b), which states, in relevant part, that

> [t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b). Here, because Defendant filed objections through counsel, this Court reviews *de novo* those portions to which an objection has been made. *See Lardie*, 221 F.Supp.2d at 807.

■ *De novo* review in these circumstances requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See* 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil 2d* § 3070.2 (1997); *see also Hill v. Duriron Co.,* 656 F.2d 1208, 1215 (6th Cir.1981). The Court may supplement the record by entertaining additional evidence, but is not required to do so. 12 Wright, *Federal Practice* § 3070.2. After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie,* 221 F.Supp.2d at 807. If the Court accepts a report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a *de novo* review of the record and adopts the report and recommendation. *See id.;* 12 Wright, *Federal Practice* § 3070.2.

Defendant, through counsel, filed objections to the report and recommendation on the issues of (A) whether an evidentiary hearing is necessary, (B) the testimony of witness Edward Osborne, and (C) the Government's alleged willful use of false testimony. Defendant also claims that the report and recommendation omits a discussion of the trial counsel's conflict of interest. Each of these objections will be discussed below.

■ Regarding issues (D) through (I) in the report and recommendation, Defendant states, "as for the other issues, [Defendant] relies on the pleadings previously filed that the information is newly discovered and that [Defendant] is entitled to an evidentiary hearing." Obj. at 3–4. From this conclusory objection, "it is hard to ... know what [Defendant] thought the magistrate had done wrong." *Howard v. Secretary of HHS,* 932 F.2d 505, 508 (6th Cir. 1991). Defendant does not articulate any particular flaw in the Magistrate Judge's reasoning regarding the "other issues." The Court notes that by raising these cursory objections, Defendant seeks to have this Court review the entire voluminous record and duplicate the Magistrate Judge's efforts without a particular focus, "thereby making the initial reference to the magistrate useless." *Id.* The nature of such an objection wastes judicial resources. The Sixth Circuit has previously advised parties that "a concise statement of *specific holdings* of the magistrate judge to which exception is taken is the preferred and safer course." *Kelly v. Withrow,* 25 F.3d 363, 366 (6th Cir.1994) (emphasis added). The report and recommendation explicitly advised the parties to file "specific" objections. Rep. & Rec. at 11. By making such generalized objection to the issues, Defendant has failed to object with specificity in a case that involves particularly extensive pleadings.

The Court notes that the Sixth Circuit has refrained from adopting "a general rule that every attempt to incorporate other documents by reference in lieu of spelling out specific objections to a magistrate's report will suffice." *Id.* The Court determines that by simply relying on previous pleadings, Defendant has not raised specific objections to the Magistrate Judge's determinations in sections (D)-(I). The Court therefore determines that Defendant has waived objections to these claims. Even if the objections were considered to be properly raised, the Court has reviewed the record in accordance with the above standard and agrees with the conclusions of the Magistrate Judge. *See* Rep. and Rec. at 7–11. The Court will therefore accept and adopt the Magistrate Judge's report and recommendation regarding these other issues.

 The Court will first address the issue of (A), whether Defendant is entitled to an evidentiary hearing. In the objections, Defendant's counsel states that "an evidentiary hearing is necessary to determine whether Defendant's trial counsel acted under an obvious conflict of interest when he represented" Defendant and two others. Obj. at 1. As discussed below, the Court finds that Defendant clearly waived the conflict of interest issue in writing and at a hearing, and therefore an evidentiary hearing is unnecessary. As the Magistrate Judge stated, an evidentiary hearing for a motion for a new trial "is within the discretion of the trial court." *United States v. O'Dell*, 805 F.2d 637, 643 (6th Cir.1986). If a verdict is of questionable validity then additional evidence would be critical to the Court's determination and an evidentiary hearing would be appropriate. *Id.* (citations omitted). In this case, the Court does not find that the verdict, which has been affirmed on appeal and on which a motion to vacate sentence has

been denied and affirmed, is one of "questionable validity" that would warrant an evidentiary hearing. *O'Dell*, 805 F.2d at 643. The Court has reviewed the voluminous pleadings in this case, including the voluminous exhibits, as well as the transcripts of the status conference before the Magistrate Judge on November 30, 2004. The Court concludes that an evidentiary hearing is not necessary in this case. The issues presented by Defendant, including the claims of conflict, are sufficiently presented in the written record for their adjudication.

 Defendant next objects to section (B) of the Report and Recommendation, which addresses whether Defendant had obtained the discovery relating to Osborne, Bowling, and Marsh. Defendant claims that certain reports and transcripts of those individuals' plea and sentencing transcripts were withheld. The Court agrees with the finding of the Magistrate Judge on this issue. *See* Rep. & Rec. at 3–5. In particular, the Government did disclose the plea agreements to Defendant, and the transcripts of the various proceedings could have been ordered by defense counsel. *See* GX 13. Even assuming that the discovery had been withheld, in order to warrant a new trial, a defendant must show that the new evidence "would likely produce an acquittal if the case was retried." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir.2000); Rep. & Rec. at 1. Defendant has not met this burden.

Defendant next objects to section (C) of the Magistrate Judge's report and recommendation, which addressed the Government's alleged willful use of false testimony. In this three sentence objection, Defendant again argues that Defendant did not have the plea and sentencing transcripts or various FBI reports. As stated above, even assuming that these materials had been withheld, in order to

warrant a new trial, a defendant must show that the new evidence "would likely produce an acquittal if the case was retried." *Turns*, 198 F.3d at 586; *see also* Rep. & Rec. at 5–7. Defendant has not met this burden.

■ Finally, Defendant objects that the report and recommendation omits a discussion of "trial counsel's serious conflict of interest and the filing of an affidavit by counsel which indicated that he was conflict free when the documents revealed to the contrary." Obj. at 4. Defendant claims that his trial counsel, Mr. Andreoff, had a conflict of interest because he had previously represented Anthony Bowling and Edward Osborne, who testified at Defendant's trial. Judge Newblatt held a hearing regarding the conflict of interest issue on July 7, 1993, several months prior to trial. *See* GX 43. Defendant was present at the hearing. At the hearing, Judge Newblatt extensively questioned Defendant; Defendant unequivocally stated that he understood the conflict and the risks involved and that he desired to continue to have Mr. Andreoff represent him. *Id.* at 10, 23–32. Defendant acknowledged that he "talked with [attorney Andreoff] at great length" about the issues, that "ever since this question was raised . . . [Defendant is] satisfied totally with everything. We went over it all of ten times. And I'm totally aware of everything." *Id.* at 23, 24. Defendant further stated that "[w]hatever the risk and the consequences may be, I'm well aware of it." *Id.* at 24. Mr. Andreoff had represented Defendant in other civil matters, and Defendant "trust[ed] him." These statements were made under oath. *See id.* at 30–31. Defendant signed a waiver of the conflict of interest. GX 44. Additionally, a separate attorney was retained to cross examine those two witnesses at trial. *See* GX 47 at 8–9. The Court determines that Defendant waived

this conflict of interest and that a new trial is not warranted on this basis. GX 42–49.

Having therefore reviewed each of Defendant's objections, presented through counsel, the Court determines that the objections should be overruled.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's objections [docket entry 594] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the report and recommendation [docket entry 592] is **ACCEPTED** and **ADOPTED** as the opinion of this Court and that Defendant's motions for a new trial [docket entries 279, 296, 303, 308, and 349] are **DENIED**.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

CAPEL, United States Magistrate Judge.

### I. INTRODUCTION

Before the Court is Defendant's "Revised Motion for New Trial Pursuant to Federal Rule of Criminal Procedure Rule 33," filed October 29, 1997.

### II. STANDARD OF REVIEW

■ Motions for a new trial based on newly discovered evidence are disfavored and should be granted with caution. *United States v. Turns*, 198 F.3d 584, 586 (6th Cir.2000). The defendant bears the burden of proving that a new trial should be granted for newly discovered evidence. *United States v. Pierce*, 62 F.3d 818, 824 (6th Cir.1995). When a defendant makes a motion for a new trial based upon newly discovered evidence, he must show that the evidence: 1) was discovered after the trial; 2) could not have been discovered earlier with due diligence; 3) is material and not merely cumulative or impeaching; and 4) would likely produce an acquittal if

the case was retried. *Turns,* 198 F.3d at 586–87.

## III. *ANALYSIS*

### A. Evidentiary Hearing

Defendant Robinson claims that he is entitled to an evidentiary hearing. Defendant first argues that the Court of Appeals ordered the district court to hold an evidentiary hearing in its Order dated October 3, 1997. I disagree.

The Order in relevant part stated that because they had already affirmed the conviction and sentence on direct appeal, we vacate the district court's order denying the motion for new trial without prejudice, and we remand to the district court for a determination of the new trial motion on the merits. The Order contains no language requiring or directing the district court to hold an evidentiary hearing.

Defendant next argues that the Court must hold an evidentiary hearing based upon the rulings in *Arredondo v. United States,* 178 F.3d 778, 782–83 (6th Cir.1999) and *Engelen v. United States,* 68 F.3d 238 (8th Cir.1995). Defendant's reliance of these cases to support his position is misplaced. Both of these cases involved review of prisoner petitions filed pursuant to 28 U.S.C. § 2255.

A prisoner who files a motion pursuant to § 2255 challenging a federal conviction is entitled to a prompt hearing in which the district court is to determine the issues and make findings of fact and conclusions of law with respect thereto. 28 U.S.C. § 2255. The hearing is mandatory "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ...'" *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973).

That standard does not apply to this case. Before the Court is a motion for new trial filed pursuant to Fed. R.Crim. Proc. 33. On a Rule 33 motion, "[t]he question of whether to decide the motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court." *United States v. O'Dell,* 805 F.2d 637, 643 (6th Cir.1986).

In this case an evidentiary hearing is not necessary. The supporting evidence filed with the motion are sufficient to reach a conclusion.

### B. Edward Osborne

■■■ Defendant claims that the government violated his right to due process and a fair trial when it knowingly suppressed the testimony of material witness, Edward Osborne. Defendant claims that Mr. Osborne's testimony in Darrell Chambers' trial in 1995 as to when he met Defendant, made it chronologically impossible for Defendant to have instructed Osborne to transport drugs from Chambers house in Detroit to Anthony Bowling and to Cleveland, Ohio, from late 1989 until early 1990.

Defendant also claims that Mr. Bowling had advised the prosecutor, Mr. Jones, that he had only two suppliers of drugs. Defendant claims that Mr. Bowling submitted a sworn affidavit in which he testified that Mr. Jones had instructed him to provide false testimony under oath before the Grand Jury, and at trial, against Olee Robinson. Defendant claims that Mr. Jones had a scheme to have Mr. Bowling switch his original sworn statements and testimony that had previously exonerated Robinson from drug trafficking.

Defendant claims that had the government provided the prison testimony of Anthony Bowling, Edward Osborne, and Timothy Marsh, he would and could have used their prior statements and/or testimony for impeachment purposes. Defendant claims

that the government's failure to turn over the testimony and documents amounted to a *Brady* violation. Defendant's claims are without merit.

 In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Notwithstanding a *Brady* request, the prosecution is under a duty to disclose exculpatory evidence that, when viewed in the context of the entire record, "creates a reasonable doubt that did not otherwise exist." *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). No *Brady* violation occurs, however, "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' or where the evidence is available from another source." *United States v. Clark,* 928 F.2d 733, 738 (6th Cir.1991) (internal citation omitted).

Defendant fails to establish a *Brady* violation on this case, because contrary to his claims, the government did provide him with the documentation, statements, and testimony of these witnesses prior to trial. A discovery request dated November 4, 1993, establishes that Defendant's attorney received 345 pages of discovery which included: criminal history of Edward Osborne; FBI 302's of interviews; FBI 302's cooperating witness interviews; physical surveillance; Nagra tape; and consensual telephone conversations, which all related to Osborne.

The discovery also included the criminal history of Anthony Bowling, as well as transcripts of the Grand Jury testimony of Anthony Bowling and Timothy Marsh, the Rule 11 Plea Agreements of Bowling and Osborne, and their criminal Judgments.

██ Defendant's motion also fails because he has not satisfied the requirement of the newly discovered evidence rule. With the exception of Osborne's testimony at Chamber's trial, none of the discovery was newly discovered. Defendant had the material prior to trial.

Furthermore, the material provided allowed Defendant to fully cross exam Osborne about the dates in which he and Defendant were alleged to have met, and Osborne's sources of cocaine. Osborne's statements at Chamber's trial would also fail to meet the requirements because they are not material and are merely cumulative or impeaching.

## C. Government's Willful Use of False Testimony

██ Defendant alleges that his right to a fair trial was violated when the prosecutor for the government knowingly, willfully, and intentionally instructed government witness Edward Osborne to provide false testimony to obtain the Defendant's indictment and conviction.

In support of this claim, Defendant again raises Osborne's testimony at Chambers' trial concerning the time frame in which Osborne testified differently at Chambers' trial as to who was giving instructions to the drug organization. Defendant claims that the information which was contained in FBI 302's and Osborne's plea hearing was suppressed from the de-

fense before trial. Defendant's claim is patently false.

The discovery request provided as an exhibit clearly establishes that Defendant had all of the information which he claims was suppressed prior to trial. Defendant, therefore, fails to meet the first requirement that the evidence be newly discovered.

Defendant's complaints about the government alleging dual supervision is also without merit. The Sixth Circuit addressed this very issue in denying Darrell Chambers appeal of the denial of his motion for a new trial. In that decision dated August 5, 1997, the court held:

> The district court ultimately concluded that the evidence regarding Robinson in his trial included Chambers as one of the listed individuals for the continuing criminal enterprise charge, and similarly Robinson was listed as one of the individuals in Chambers' later trial. Appellant appears to argue that it is inconsistent for the government to take the position in the first case that Robinson managed Chambers and in the second case that Chambers managed Robinson. However, this argument misstates the government's position. Rather, the govern-ment's [sic] position was that Robinson and Chambers were organizers in both trials, consistent with *Davis,* 809 F.2d at 1204. There is nothing inconsistent in a criminal organization having more than one manager or organizer. We are in agreement with the district court that even if Agent Reincke made an incorrect statement, there is no evidence that the prosecutor knew it was false or that it was material. Moreover, we cannot say that evidence of such a misstatement would likely produce an acquittal if the case were retried.

*United States v. Chambers,* 121 F.3d 710, 1997 WL 441801, *7 (6th Cir.1997) (Table,

unpublished disposition). The same holds true here. Even if Osborne gave conflicting evidence at the two trials, that evidence would not likely produce an acquittal if the case were retried. In this case, the government argued that Defendant Robinson was an organizer.

In *United States v. Butler,* 885 F.2d 195 (4th Cir.1989), the court reviewed what the government must prove to be a § 848 case. The court stated that a

> defendant's relationship with other persons need not have existed at the same time, the five persons involved need not have acted in concert at the same time or with each other, and the same type of relationship need not exist between defendant and each of the five. Nor need the defendant have personal contact with the five persons because organizational authority and responsibility may be delegated. And while some proof of a supervisory or managerial relationship requires a showing of some degree of control by the defendant over the other persons, such proof is not required to show that a defendant acted as an organizer.

*Id.* at 200–01. (internal citations omitted).

Further closing the door on Defendant's argument is the Court's ruling denying his appeal. The Sixth Circuit in an opinion dated September 5, 1996, noted that Robinson conceded on appeal that there was sufficient evidence that he controlled Osborne and Bonds for the purposes of a continuing criminal enterprise ["CCE"]. The Court found ten people of whom the evidence supported that Robinson controlled or supervised.

**D. Government Misconduct**

■ Defendant claims that the prosecutor committed prosecutorial misconduct by deliberately misleading or installing

false impressions to the Grand Jury in his efforts to obtain an indictment. Defendant claims that the government's witness, Anthony Bowling, had previously advised the government prosecutor and witnesses that Defendant was not involved with drug trafficking. Defendant claims that he was denied all of this information, specifically Bowling's plea and sentencing transcripts, and that if he had them he could have exposed the perjury and been exonerated.

Defendant also claims that Mr. Jones instructed Mr. Bowling to provide false testimony to the Grand Jury by implicating him in a drug conspiracy that the prosecution knew did not exist. Defendant claims that Bowling gave a sworn affidavit of the criminal misconduct by Mr. Jones, but later recanted it.

Defendant's allegations are without merit. As previously noted, his arguments are based upon a false premise, that he failed to get this information prior to trial. None of this evidence is newly discovered. Furthermore, at page 36 of his motion, Defendant states that "during the Robinson trial, Robinson['s] defense attorney questioned Bowling concerning his prior conflicting testimony."

 Furthermore, Defendant offers no evidence to support his claims that Mr. Jones instructed Anthony Bowling to commit perjury or to establish drug conspiracy which did not exist. To the contrary, the evidence overwhelmingly supports Defendant's conviction. To establish prosecutorial misconduct in introducing false testimony, Defendant must prove three elements: "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *See United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir.1989) (citations omitted). The prosecution's knowing introduction of false "testimony constitutes a denial of due process if there is a reason-

able likelihood that the false testimony could have affected the judgment of the jury." *Id.* Defendant's claim fails at all of these elements. First, Defendant fails to establish that the statements introduced to the Grand Jury were actually false, or that the prosecution knew that they were false. Defendant argues that Mr. Bowling supplied an affidavit to support his claim. The affidavit, however, is from Michelle West, a co-defendant. Mr. Bowling did not support Mr. Robinson's claim.

Secondly, Defendant cannot establish that the testimony is material, or that there is any reasonable likelihood that the false testimony could have affected the judgement of the jury. Defendant's counsel extensively cross examined Mr. Bowling concerning all of the issues which Defendant raises. Defendant is not entitled to a new trial on this claim.

### E. Agent Reinecke

 Defendant claims that the prosecutor committed prosecutorial misconduct by instructing Reinecke to provide false testimony to the Grand Jury to obtain an indictment. Defendant claims that Reinecke was instructed to tell the Grand Jury that the defendants had taken out a $100,000.00 insurance policy on the life of Sherman Christian after being robbed by Mr. Christian, when they knew it was false.

Defendant claims that the testimony is false because Sandra Curtis, the Insurance Agent provided an affidavit which stated that she advised government agents before trial that Sherman Christian had opened up his own insurance policy for himself, Cynthia Horry, and his children.

Defendant is not entitled to a new trial on this claim based on newly discovered evidence. Defendant had the information about the insurance policy prior to trial, so

the evidence is not newly discovered. Defendant is also not entitled to relief on the grounds that the testimony was false, because Defendant cannot establish that the testimony was actually false.

The evidence establishes that the original insurance policy was changed or falsified to list some of the defendants as beneficiaries. Defendant himself received proceeds from the insurance policy. Finally, Defendant cannot establish that the evidence was material. Defendant's counsel had the opportunity to cross examine the issue at trial.

### F. Wiretap

 Defendant claims that introduction of illegally obtained wiretap evidence denied him a fair trial. The convictions in this case were consensually recorded. The Supreme Court has held that "federal statutes impose no restrictions on recording a conversation with the consent of one of the conversants." *United States v. Caceres*, 440 U.S. 741, 750, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *see also United States v. Barone*, 913 F.2d 46, 49 (2nd Cir.1990) ("Because the Government made the recording with the consent and cooperation of [the informant] there was no need to inform [the defendant] or obtain a court order."(citations omitted)). Defendant is not entitled to relief on this claim.

### G. Interference with Witnesses

 Defendant claims that he was denied due process when the government advised witnesses Marbury and Hodge that they would be indicted if they testified. Defendant's claim should be denied. A prosecutor may properly caution a defense witness about the risk of testifying, e.g., the danger of self-incrimination, but the prosecution cannot "interfere with a defense witnesses' free and unhampered choice to testify." *United States v. Jackson*, 935 F.2d 832, 846 (7th Cir.1991) (citations omitted). Defendant's claim only establishes that the prosecution advised the witnesses about the risk of testifying.

### H. Pretrial Publicity

 Defendant claims he was denied his right to a fair trial when the government prosecutor made knowing and intentional false statements to the press; Defendant claims that the statements caused incalculable prejudice to him in the community. Pretrial publicity under certain circumstances can deprive a defendant of his right to a fair trial. However, for pretrial publicity to undermine the fairness of the judicial process it must be either inherently prejudicial or result in actual prejudice. *See Rideau v. State of Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

 Publicity surrounding a judicial proceeding is inherently prejudicial when it fosters a circus-like atmosphere in a courtroom draining the proceeding of the "solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Murphy*, 421 U.S. at 799, 95 S.Ct. 2031. No evidence exists of inherent prejudice in this case. Actual prejudice may exist if the nature and extent of the pretrial publicity may have such a substantial effect on prospective jurors as evidenced by the voir dire testimony that a fair trial was impossible. *Id.* at 798, 95 S.Ct. 2031. Defendant makes no showing of actual prejudice. The Defendant complains about one newspaper article, and not extensive publicity. Furthermore, he does not argue that he was unable to select a fair jury or that potential jurors were influenced in any way by the article. Defendant establishes no evi-

dence of prejudice in this case resulting from pretrial publicity other than his cursory allegations.

## I. Jencks Act

 Defendant claims that the government violated the Jencks Act by failing to produce Bowling and Osborne's prior statements. Defendant's claim is without merit. The discovery receipt clearly establishes that the statements given to Defendant prior to trial.

## IV. *CONCLUSION*

For the reasons stated above, I respectfully recommend that Defendant's motion be DENIED.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of this recommendation they may serve and file specific, written objections to the proposed findings and recommendations. Further, either party may respond to another party's objections within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

In accordance with the provisions of Rule 6(b) of the Federal Rules of Civil Procedure, the Court, in its discretion, may enlarge the period of time in which to file objections to the report.

February 24, 2005.