# United States Court of Appeals
## For the First Circuit

No. 08-2149

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL MOSES LENZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Selya and Hansen,[*]
Circuit Judges.

Jaye L. Rancourt for appellant.
Donald A. Feith, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, and Helen White Fitzgibbon, Assistant United States Attorney, were on brief, for appellee.

August 14, 2009

[*]Of the Eighth Circuit, sitting by designation.

**HANSEN**, <u>Circuit Judge</u>. Daniel Moses Lenz appeals from the district court's denial of his motions for a new trial based on newly discovered evidence following his conviction for transporting a minor in interstate commerce with the intent to engage in sexual activity. We agree with the district court that the victim's postverdict corroboration of Lenz's defense theory was not newly discovered evidence, and we affirm.

## I.

Daniel Lenz, a 26-year-old man from Florida, was arrested after local New Hampshire police located a missing 15-year-old girl from New Hampshire (we will refer to her as Jane, a fictional name) with Lenz's friend, Jason Downing, in South Carolina en route to Florida on March 27, 2007. Lenz had met Jane two months earlier while playing the on-line role playing game of World of Warcraft (WOW), and the two had developed an on-line relationship. Jane suffered from depression, anxiety, and severe social phobia to the point that she rarely left her house. According to Lenz, he asked Downing to go to New Hampshire to get Jane because she was threatening to kill herself if Lenz did not come and get her. Jane was packed and willingly went with Downing.

Jane's parents filed a missing persons report, and local police found her the next day through chat logs maintained by Blizzard Entertainment, the creator of WOW. The chat logs revealed much more than a friendship with Lenz. The chat logs contained

numerous sexually explicit conversations between Lenz and Jane, describing sexual acts they would perform when Jane could run away from home and be with Lenz in Florida.

Lenz was charged with transportation of a minor in interstate commerce with the intent to engage in illegal sexual activity in violation of 18 U.S.C. §§ 2423(a) & 2. Lenz's defense at trial was that he was transporting Jane to Florida to save her from killing herself, not to have sex with her. He conceded the sexual nature of the on-line chats, but he testified at trial that the two knew it would be illegal to have sex and they planned to wait until Jane turned sixteen in August of that year before engaging in sexual activity.

During discovery, prosecutors made available to Lenz's defense counsel statements that Jane made to various sources, including her mother, a Child Advocacy Center counselor, and a Federal Bureau of Investigation agent. Jane told the Child Advocacy counselor that she had felt like she was "losing it" and had asked Lenz to help her get away from home. According to Jane, Lenz had tried to talk her out of leaving or breaking the law. Jane told Lenz that if he did not send someone to get her, she would "go crazy and hurt herself or something." The discovery file also included interviews by the FBI with both Jane and her mother. Jane told an FBI agent that she might have led Lenz to believe that she was being abused physically and emotionally at home, although

she was not in fact being abused. Jane's mother stated during an FBI interview that after Jane returned home, she asked Jane whether she and Lenz were going to be lovers when she arrived in Florida, and Jane responded "yes." Jane had also told her mother that Lenz planned to take her to a free clinic to get a birth control device when she arrived in Florida. Lenz's counsel did not attempt to interview Jane prior to trial.

After Lenz's arrest, Jane's treating psychologist, Dr. Vincent DeSantis, diagnosed her with bipolar disorder. He told prosecutors that she had created another personality through the WOW video game and that Jane was in a manic phase of her disorder when she left with Downing to go to Florida. He strongly recommended that she not testify at the trial because of the traumatic reaction she would have to facing the recent events. The Government sought to have Jane declared unavailable to testify as part of its pretrial motion to introduce the chat logs at trial. The district court did not initially rule on Jane's unavailability, but stated that it would take up the issue if Lenz subpoenaed Jane to testify. When the Government introduced the chat logs at trial, the court overruled Lenz's objection that the Government had not established that Jane was unavailable to testify. The court ruled that the Government did not need to establish her unavailability because Jane's statements contained in the chat logs were allowed only for the purpose of establishing context for Lenz's statements,

which themselves were allowed as party admissions. Lenz declined the court's offer of an instruction to the jury concerning the limited use the jury could make of Jane's chat log statements. Lenz did not call Jane to testify as part of his defense.

Lenz was convicted on August 30, 2007, following a three-day jury trial. Subsequently, Lenz began writing letters to Jane expressing his love for her and to Jane's parents apologizing for his actions. Jane's parents became convinced that Lenz meant no harm to Jane and allowed her to visit him in jail. In December 2007, Jane and her mother met with Lenz's trial counsel and made a recorded statement in which Jane stated that although she and Lenz "would have eventually" had sex after she went to Florida, that was not the real reason that Lenz attempted to take her to Florida. Jane's mother stated that Jane had "clarified" with her that the two would have had sex "eventually."

Lenz filed a Rule 33 Motion to Vacate Verdict and Grant New Trial based on the allegedly newly discovered evidence that Jane would testify that the real reason Lenz took her from her home in New Hampshire was to save her from killing herself, not to have sex with her. The district court held a hearing on January 17, 2008, and denied the motion. Lenz then discharged his trial counsel and retained new counsel, who filed a second motion for a new trial on the basis that Lenz's trial counsel provided ineffective assistance by failing to interview Jane prior to trial.

The district court denied the second motion without a hearing. Lenz appeals the denial of both motions for a new trial.

## II.

We review the district court's denial of Lenz's two Rule 33 motions for a new trial for a "manifest abuse of discretion." United States v. Hernandez-Rodriguez, 443 F.3d 138, 143 (1st Cir. 2006) (internal quotation marks omitted). "We give considerable deference to the district court's 'broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes "new" evidence.'" United States v. Falu-Gonzalez, 205 F.3d 436, 443 (1st Cir. 2000) (quoting United States v. Montilla-Rivera, 115 F.3d 1060, 1067 (1st Cir. 1997)).

Lenz premised both of his motions for a new trial on newly discovered evidence, which was the only basis available to him since the motions were filed more than seven days after his guilty verdict. See Fed. R. Crim. P. 33(b) (requiring all motions for a new trial grounded on any basis other than newly discovered evidence to be brought within seven days of a guilty verdict but allowing three years in which to bring a motion based on newly discovered evidence). Under the Wright test, Lenz must establish each of the following before he is entitled to a new trial based on newly discovered evidence: "(1) the evidence was unknown or unavailable to [him] at the time of trial; (2) failure to learn of

-6-

the evidence was not due to [his] lack of diligence . . . ; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial . . . ." United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980).

Lenz's first motion is premised on the allegedly newly discovered evidence that Jane would corroborate his version of the events by testifying that the two did not intend to have sex when she arrived in Florida. Lenz claims that he learned from the discovery record that Jane would not testify in his favor if called as a witness based on her mother's statement in the FBI interview that Jane had told her that she and Lenz "intended to be lovers upon [her] arrival in Florida." According to Lenz, Jane's change in her story to one that corroborated Lenz's defense theory, which was not revealed until months after the trial when she was interviewed by Lenz's trial counsel, was therefore unknown to Lenz at the time of trial.

Jane's testimony about the reason for her trip to Florida arises from her conversations with Lenz when she begged Lenz to come and get her and threatened to hurt herself if he did not, as well as from her conversations with Lenz about waiting until she turned sixteen before having sex. Because Lenz was a party to the conversations in which the pair discussed their shared mutual intent to wait until Jane turned sixteen before having sex, the fact that Jane knew the "real" reason for Lenz wanting to take her

to Florida (to save her from hurting herself) cannot be said to be "newly discovered evidence" unknown or unavailable to him before trial. See Falu-Gonzalez, 205 F.3d at 443 ("Information surrounding a defendant's own conversations rarely qualifies as newly discovered evidence."); United States v. DeLuca, 137 F.3d 24, 40 (1st Cir.) ("[S]ince [the defendant] participated in these conversations he must have known long before trial that the 'exculpatory' testimony these witnesses could provide would be essential to respond to the evidence against him . . . ."), cert. denied, 525 U.S. 874 (1998).

Lenz claims that although he knew the substance of his conversations with Jane, what was new to him was Jane's willingness to testify to those facts in corroboration of his story. Lenz's argument loses sight of the rule. Rule 33 allows a district court to grant a new trial if the defendant brings forward "newly discovered evidence." Fed. R. Crim. P. 33(b)(1) (emphasis added). "Whether or not a witness will testify truthfully if called to the stand is simply not 'evidence' that can be used as a basis to invoke Rule 33 of the Federal Rules of Criminal Procedure." United States v. Turns, 198 F.3d 584, 588 (6th Cir. 2000) (rejecting a Rule 33 motion premised on postconviction affidavits offered by the defendant's sister, who had refused to testify at the first trial and threatened to lie on the stand, but who was now willing to testify at a new trial); see also United States v. Lofton, 333 F.3d

874, 876 (8th Cir. 2003) (rejecting claim of newly discovered evidence based on nontestifying codefendant's postverdict willingness to testify that defendant was unaware of presence of drugs where defendant did not subpoena codefendant to testify at trial).[1]

In Lofton, the court distinguished between a witness's willingness to testify (or testify truthfully), which is not itself evidence, and the particular relevant fact about which the witness may testify, which is evidence. Lofton, 333 F.3d at 876 ("Before trial, [defendant] knew the relevant fact at issue - whether [his codefendant] had advised [defendant] during the course of their travels that [the codefendant] was carrying illegal drugs in the vehicle."). Where the relevant fact itself is known prior to trial, that the defendant learns after trial that the witness will testify about that fact is not newly discovered evidence for purposes of Rule 33. Id. The Sixth Circuit similarly held that where a witness who was capable of offering exculpatory testimony was not called to the stand because of fears she would testify dishonestly, the after-trial revelation that she is willing to testify honestly is not itself newly available evidence. Turns, 198 F.3d at 588 ("What [the defendant's] sister would or would not

_____

[1]We note that Lofton may be in tension with our own precedent in one respect. See, e.g., Hernandez-Rodriguez, 443 F.3d at 144; Montilla-Rivera, 115 F.3d at 1065-66. But the area of tension is immaterial to the issues in this case.

have said on the witness stand about this key fact was certainly relevant to [defendant's] decision . . . to call her, but is not itself 'newly discovered' evidence under Rule 33."). Here, the relevant fact at issue was whether Lenz took Jane to Florida for the purpose of engaging in illegal sexual activity, a subject about which Lenz and Jane had conversed prior to Lenz's arrest. Jane's newfound willingness to testify to the substance of those conversations is not new evidence. See id. at 587 ("A witness's shifting desire to testify truthfully does not make that witness's testimony 'newly discovered' evidence.").

Had the district court ruled that Jane was unavailable to testify, her testimony that sex was not the reason Lenz was taking her to Florida may have been considered "not previously available" for purposes of Rule 33. See Hernandez-Rodriguez, 443 F.3d at 144 ("This circuit has long held that exculpatory affidavits from co-defendants who exercised their Fifth Amendment privilege not to testify at trial may constitute 'newly discovered evidence' for Rule 33 purposes."). We need not concern ourselves with the propriety of extending the rule from Hernandez-Rodriguez outside of the context of codefendants who refuse to testify and invoke their Fifth Amendment privilege not to incriminate themselves.[2] Lenz

---

[2]Our willingness to rule out categorically postconviction codefendant statements as new evidence puts us at odds with ten other circuits, see United States v. Del-Valle, 566 F.3d 31, 39 n.5 (1st Cir. 2009), such that we take "a more expansive view of Rule 33" than the majority of circuits, United States v. Owen, 500 F.3d

never attempted to subpoena Jane or otherwise ask the district court to rule on her availability. Thus, the content of any of Jane's statements that Lenz knew about prior to trial was not made unavailable by Jane's failure to testify at trial.

The basis for Lenz's second motion for a new trial is equally unavailing. Lenz claims that his trial attorney provided ineffective assistance of counsel because he did not contact Jane prior to trial to ascertain whether she would corroborate Lenz's testimony. "[A] claim of ineffective assistance of counsel is not newly discovered for the purposes of Rule 33 when based on facts known to the defendant at the time of trial." United States v. Lema, 909 F.2d 561, 566 (1st Cir. 1990). "Properly read, Lema precludes defendants from prevailing under Rule 33's 'newly discovered evidence' provision when their lawyers knew at trial about the evidence that defendants now claim is newly discovered." United States v. Osorio-Pena, 247 F.3d 14, 19 (1st Cir. 2001).

At the hearing on the first Rule 33 motion, Lenz's trial counsel testified that he did not contact Jane to determine whether she would corroborate Lenz's version of why she was going to

83, 88 (2d Cir. 2007), cert. denied, 128 S. Ct. 1459 (2008). However, we do share in the skepticism voiced by our sister circuits about whether such statements will warrant a new trial. See Del-Valle, 566 F.3d at 39 (cautioning that codefendant exculpatory evidence "must be regarded with great skepticism, since it is not unusual for the obviously guilty codefendant to try to assume the entire guilt and a convicted, sentenced codefendant has little to lose (and perhaps something to gain) from such testimony" (internal marks omitted)); Montilla-Rivera, 115 F.3d at 1067-68.

-11-

Florida because he did not want to increase hostilities with her family. Even though Lenz's trial attorney did not interview Jane, he knew about the substance of the conversations between Lenz and Jane because those conversations formed the basis for Lenz's defense at trial and Lenz testified about the conversations at trial. Further, Lenz recognizes in his brief that "at least three of [Jane's] statements to law enforcement and others corroborated defendant's testimony and the defense theory at trial." The evidence that Jane threatened to kill herself if Lenz did not take her to Florida and the evidence that Jane had discussed waiting until she was sixteen to have sex with Lenz were available and known at the time of trial without interviewing Jane; it was only Jane's willingness to testify to the evidence that was in doubt. Again, whether or not Jane would testify favorably is distinct from the substance of the evidence she might give. We have previously joined the decided majority of circuits that agree that ineffective assistance of counsel claims based on evidence known to the defendant at the time of trial "are not newly discovered under the rule, accepting the notion that 'newly discovered evidence must be newly discovered evidence.'" Lema, 909 F.2d at 565 (collecting cases and quoting United States v. Ellison, 557 F.2d 128, 133 (7th Cir. 1977)). Lenz's ineffective assistance claim is not based on newly discovered evidence, and the district court properly denied the Rule 33 motion on that basis. A claim of ineffective

assistance of counsel is customarily raised in a petition for post-conviction relief, <u>see</u> 28 U.S.C. § 2255, and our decision today does not prejudice Lenz's right to seek such relief.

### III.

We affirm the district court's judgments denying Lenz's Rule 33 motions for a new trial.